**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Paul K. COSTNER, Defendant-Appellant.**

**No. 81–5525.**

United States Court of Appeals, Sixth Circuit.

Argued May 28, 1982.

Decided July 30, 1982.

Herbert S. Moncier, Edward E. Wilson, Knoxville, Tenn., for defendant-appellant.

John H. Cary, U. S. Atty., Robert E. Simpson, Asst. U. S. Atty., Knoxville, Tenn., for plaintiff-appellee.

Before MARTIN and CONTIE, Circuit Judges, and WALINSKI,* District Judge.

CONTIE, Circuit Judge.

Appellant appeals his conviction by jury on two counts of violating 18 U.S.C. § 1014, by making a false statement to a federally insured bank for the purpose of influencing the bank to lend him money. Appellant presented to the Bank of Knoxville certificates of title for two 1979 Chevrolet Blazers as collateral for a loan of approximately $15,000.00. Before the loan became due, appellant notified his insurance company and the bank that the vehicles had been stolen.

The government contends that the appellant never owned or possessed the Blazers, that they were properly titled to someone else, and that appellant purposely defrauded the Bank of Knoxville by presenting the worthless titles.

Appellant contends that he purchased the two vehicles at auction, and that he left them in the care and possession of a friend and associate in North Carolina while he returned to Tennessee. Appellant's theory of the case is that he unwittingly purchased two stolen vehicles that had been laundered by means of fraudulent certificates of title and a change in vehicle identification numbers (VINs).

At trial documents were introduced tracing ownership of the two Blazers with the VINs on the certificates of title presented to the bank from the manufacturer through

---

* The Honorable Nicholas J. Walinski, United States District Judge for the Northern District of Ohio, sitting by designation.

several intermediaries to the ultimate consumers.

One of the intermediaries was Danny Lynch, an automobile broker and auto body shop operator. Lynch testified that, before transferring the Blazers, he had lost the certificates of title. He ordered from the state of South Carolina duplicates, which he subsequently forwarded to his buyer. Lynch testified that he later found the lost original titles and transferred them to McCaskell, a friend who requested them as a favor. Lynch testified further that two men came to pick up the titles and that one of them was the defendant, Costner. Lynch's testimony was central to the government's case, for it was what connected Costner to a certificate of title unaccompanied by a vehicle.

During cross-examination, defense counsel quizzed Lynch about possible inconsistencies between his testimony and statements he had given various investigators.

At the beginning of defendant's case, defense counsel called Player, an investigator for the National Automobile Theft Bureau, for the purpose of impeaching the testimony of Lynch. Player, refreshing his memory by consulting reports he had written, testified that he had spoken to Lynch on two separate occasions. On the first occasion, Lynch denied ever having transferred duplicate titles or meeting the defendant; on the second, Lynch said that the defendant had picked up the titles for McCaskell.

■ At the close of Player's testimony, the defense moved to have the portions of Player's reports that he had used in testifying admitted into evidence. The prosecution moved to have the entire documents admitted. Over the defense's repeated and strenuous objection, the trial judge permitted the entire documents, labeled Exhibit 18, to be shown to the jury. The defense moved for a mistrial; the judge denied the motion.

Exhibit 18 consists of three reports written by Player to the home office of the National Automobile Theft Bureau. The first and second are dated August 1, 1980, and report that Player interviewed Lynch, who told him that he did not know Costner and had never sold him a vehicle as indicated by the title history. The third report is dated October 10, 1980; the second and third paragraphs recount a second interview with Lynch, in which Lynch told Player that (1) after receiving duplicate titles from the state, he had found the originals; (2) McCaskell had asked him for two South Carolina titles; (3) Costner and another man had picked up the titles from him; and (4) he had not indicated on the back that he had sold the vehicles to Costner.

The fourth paragraph of Player's report of October 10 records a separate incident. It reads:

Mr. Lynch contacted the writer by phone on 10–10–80 stating that he had talked with Mr. Don Alexander in Charlotte, North Carolina. Mr. Alexander advised Mr. Lynch that he knew Paul Costner and that he was a Con. Mr. Alexander stated that Mr. Costner was employed at Toyota City, Charlotte, N.C. at one time, however he tried to change a VIN plate from a 1971 Toyota to a 1979 Toyota and borrow money at some bank in Charlotte. Mr. Joe Barkeley owns this Toyota Place and will be glad to discuss Mr. Costner with anyone.**

Showing this paragraph to the jury was reversible error.

■ The purpose of Player's testimony was to impeach Lynch's testimony that he had given the certificates of title to Costner by introducing a prior inconsistent statement. Accordingly, the scope of Player's testimony was necessarily limited by the scope of Lynch's testimony. Consistent with this, the record indicates that the trial court was careful to limit Player's testimony to matters Lynch had already testified to regarding what had happened to the certificates of title for the Blazers.

** Alexander, an automobile broker, was a prosecution witness, who had testified that he had purchased the two Blazers in North Carolina for Lynch in South Carolina. He also testified that he had never met Costner, although he recognized him by sight.

■ Player's testimony and the portions of the reports he used to refresh his memory were introduced not to prove the truth of the matter asserted but to attack Lynch's credibility; consequently they were not hearsay. *Fed.R.Evid.* 801(c). However, Player's statement of what Lynch told him Alexander told him (which perhaps Barkeley told him) had no bearing on the issue of Lynch's veracity. If offered to impeach Lynch, it was inadmissible on grounds of relevancy. If offered to prove the truth of the matter asserted, it was inadmissible as hearsay. Further, it may have been inadmissible as evidence of a similar bad act.

The trial judge stated that because the defense introduced a part of the document, the prosecution could compel the admission of the whole document.

■ Rule 612, Federal Rules of Evidence, provides that when a witness uses a writing to refresh his memory,

an adverse party is entitled to have the writing produced at the hearing, to inspect it, to cross-examine the witness thereon, and to introduce in evidence those portions which relate to the testimony of the witness. If it is claimed that the writing contains matters not related to the subject matter of the testimony the court shall examine the writing in camera, excise any portions not so related and order delivery of the remainder to the party entitled thereto.

In the instant case, the defense itself introduced into evidence the relevant portions of the writing. The prosecution did not have the right to see, much less to introduce into evidence, portions of the reports unrelated to Player's testimony. The trial court had an obligation to examine the writing and excise any irrelevant matter.

A rule of completeness did exist at common law. This court has summarized that rule as follows:

The general rule is that if one party to litigation puts in evidence part of a document, or a correspondence or a conversation, which is detrimental to the opposing party, the latter may introduce the balance of the document, correspondence or conversation in order to explain or rebut the adverse inferences which might arise from the incomplete character of the evidence introduced by his adversary. * * * But this rule is subject to the qualification that only the other parts of the document which are relevant and throw light upon the parts already admitted become competent upon its introduction. There is no rule that either the whole document, or no part of it, is competent. [Citations omitted.]

*United States v. Littwin,* 338 F.2d 141 (6th Cir.), *cert. denied,* 380 U.S. 911, 85 S.Ct. 896, 13 L.Ed.2d 797 (1964). As we have already noted, what Alexander may have told Lynch he heard about Costner is not relevant to the issue of Lynch's credibility. Moreover, it does not throw light upon his contradictory statements. Neither is it necessary to complete the rest of Player's report, for it records a separate conversation with Lynch on a separate subject.

The rule of completeness has been codified in Rule 106, which reads:

When a writing or recorded statement or part thereof is introduced by a party, an adverse party may require him at that time to introduce any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it.

Fairness did not require the contemporaneous consideration of what Alexander told Lynch about Costner. Rule 106 is intended to eliminate the misleading impression created by taking a statement out of context. The rule covers an order of proof problem; it is not designed to make something admissible that should be excluded. 1 Weinstein's Evidence ¶ 106[01] (1981). *See United States v. Burreson,* 643 F.2d 1344 (9th Cir.), *cert. denied,* 454 U.S. 830, 102 S.Ct. 125, 165, 70 L.Ed.2d 106 (1981) (holding no abuse of discretion in excluding part of prior statement as irrelevant and inadmissible as hearsay).

At one point during the repeated discussion about the admission of Exhibit 18, the judge gave the jury the following limiting instruction:

Don't consider those letters for the purpose of proving facts, because they are

not substantive evidence of facts. They are only received for the sole purpose of what relevancy they may have on the credibility of the witnesses who have testified in this case.

One of those witnesses was the defendant; therefore the Court specifically instructed the jury that they could use the documents in assessing the defendant's credibility. The error of admitting Exhibit 18 was not cured by the limiting instruction.

Neither was the error harmless; for the other evidence of guilt was not overwhelming. Prior to the introduction of the hearsay statement in Exhibit 18 that Costner had committed a similar bad act, the only evidence contradicting the defendant's theory of the case was Lynch's impeached testimony that Costner had picked up the certificates of title from him.

Because we find that the admission of Exhibit 18 was reversible error, we need not consider the merit of other errors assigned by appellant.

Accordingly, we REVERSE and REMAND for a new trial.