**Sonsearaharay POLK,**
**Plaintiff–Appellee,**

v.

**YELLOW FREIGHT SYSTEM, INC.,**
**Defendant–Appellant.**

**No. 87–2076.**

United States Court of Appeals,
Sixth Circuit.

Argued March 21, 1989.

Decided May 31, 1989.

F.R. Damn, Damn & Smith, P.C., Michael J. Tauscher, Detroit, Mich., Ronald E. Sandhaus, argued, Overland Park, Kan., for defendant-appellant.

Michael Pitt, argued, Detroit, Mich., for plaintiff-appellee.

Before MERRITT and BOGGS, Circuit Judges, and CONTIE, Senior Circuit Judge.

BOGGS, Circuit Judge.

Defendant Yellow Freight System, Inc. (YFS) appeals the denial of its motion for a directed verdict and judgment notwithstanding the jury verdict for the plaintiff in this action for unlawful discharge. This is the second appeal in this case. For the reasons set forth, we affirm the judgment below.

Sonsearaharay Polk ("Polk" or "Plaintiff") is a black female who was employed continually at YFS from June 28, 1972, until May 10, 1979. On October 2, 1978, Sheila Evans, a white female, was promoted to the post of office manager. In this position, Ms. Evans had direct supervisory control over plaintiff. Many of the office workers were apparently unhappy with the selection of Ms. Evans for this position and there was much tension at the office at this time. Shortly after Evans's promotion, Evans filed a report in plaintiff's personnel file claiming that she refused to follow instructions.

Evans reprimanded the plaintiff on May 3, 1979, for selling raffle tickets at the office, and again filed a report in the plaintiff's personnel file. On May 4, 1979, plaintiff was disciplined by Ivan Waterbury, the terminal manager, for discussing internal company business with a customer. Apparently, Polk had begun crying over the phone when speaking with Henry Johnson, a representative of Vispak, a client of YFS.

On May 8, 1979, plaintiff visited the Michigan Department of Civil Rights (MDCR) to inquire about possible rights violations.

The next day, plaintiff requested access to her personnel file in accordance with the Bullard–Plawecki Employee Right to Know Act, Mich. Comp. Laws Ann. Sec. 423.501 *et seq.* During that same day, Sheila Evans allegedly informed plaintiff that she "knew where [Polk] had been."

On May 10, 1979, Evans, apparently suspicious of whether plaintiff was working on company business, asked plaintiff what she was typing. Plaintiff became agitated and refused to show Evans the paper. An argument ensued, and Waterbury came over to investigate. He then asked to see the paper and plaintiff refused to show it to him. He informed plaintiff that she was suspended and that he was going to recommend that she be discharged for insubordination. YFS's Employee Review Committee then reviewed the matter and approved plaintiff's discharge, effective May 19, 1979. Plaintiff thereafter filed a complaint with the MDCR alleging discharge on the basis of racial discrimination.

Plaintiff also filed for unemployment benefits with the Michigan Employment Security Commission (MESC). On June 18, 1979, the MESC disqualified her for full unemployment benefits on the ground that her discharge was for "misconduct." This ruling was upheld in a redetermination on July 30, 1979. Plaintiff appealed, and a full evidentiary hearing was held on September 4, 1979. The referee issued findings and an order rejecting plaintiff's claim on January 4, 1980, finding that plaintiff's discharge was caused by her own misconduct in refusing instructions from Evans and Waterbury. The Employment Security Board of Review affirmed this decision on April 15, 1981.

Plaintiff instituted the present action in Wayne County Circuit Court on December 14, 1981, and the action was removed by YFS to the United States District Court for the Eastern District of Michigan. Plaintiff's complaint alleged wrongful discharge generally and pursued five different theories specifically: 1) unlawful discharge because of plaintiff's race, 2) unlawful discharge in retaliation for pursuing rights under the Elliott–Larsen Civil Rights Act,

3) unlawful discharge in retaliation for her request to review her personnel file, 4) discharge without just cause in violation of her contractual rights, and 5) extreme emotional distress due to the outrageous conduct of YFS concerning the incident.

The first trial lasted from November 15, 1983 until November 23, 1983. A special verdict form was submitted to the jury to allow them to decide on each of plaintiff's claims if necessary. The jury found in favor of plaintiff on each of her separate claims with the exception of race discrimination. The jury then awarded damages of $121,300 in lost earnings and benefits, $25,000 in non-economic compensatory damages for actions occurring before plaintiff's discharge, and $50,000 in non-economic compensatory damages for actions occurring after plaintiff's discharge.

After trial, the plaintiff requested reinstatement, attorney fees, and "front pay" (an amount of money to compensate for the time before plaintiff can be rehired). On August 2, 1984, the court awarded plaintiff reinstatement, front pay of $3,000 and attorney fees of $14,250. YFS filed an emergency motion before this court in order to stay the reinstatement order. This motion was denied by order dated September 28, 1984. Plaintiff was thus reinstated in September 1984, and is now working at YFS in the same department as before her discharge. YFS then appealed the decision to this court. Plaintiff did not cross-appeal on her racial discrimination claim.

On September 11, 1986, this court reversed the district court's failure to grant a judgment NOV with respect to plaintiff's claims of severe emotional distress, unlawful discharge in retaliation for her request to see her personnel file, and discharge without just cause. This court then remanded to the district court for a new trial regarding plaintiff's claims of retaliation for her discussion with the MDCR. *See Polk v. Yellow Freight System, Inc.,* 801 F.2d 190 (6th Cir.1986) (*Polk* I). Specifically, this court directed the district court to provide instructions on retaliatory firing such that retaliation could be found if the protected activity was a "significant factor" in the decision to fire, but not if there was only a "causal link" between the two.

On remand, the jury returned a verdict in favor of the plaintiff on her claim that she was discharged in retaliation for her visit to the MDCR. The jury found damages in the nature of lost wages and benefits in the amount of $136,000 and awarded compensation for non-economic losses, in the amount of $50,000. Immediately after the jury returned its verdict, YFS moved for a judgment NOV. This motion was denied and judgment for plaintiff was entered on October 9, 1987.

YFS subsequently filed this appeal, claiming that the district court should have entered judgment NOV, that the district court allowed prejudicial and irrelevant evidence to go before the jury, and that the district court wrongly instructed the jury regarding plaintiff's non-economic damages.

I

YFS claims that the district court should have granted a judgment NOV because of its claim that no set of facts presented at trial could support the theory that Polk's dismissal was in retaliation for visiting the MDCR.

Under Michigan law, a court is to grant a judgment NOV if the non-moving party offered no evidence under which a reasonable person could find in that party's favor. *Perry v. Hazel Park Harness,* 123 Mich. App. 542, 332 N.W.2d 601, 604 (1983); *Chappell v. G.T.E. Products Corp.,* 803 F.2d 261, 265 (6th Cir.1986), *cert. denied,* 480 U.S. 919, 107 S.Ct. 1375, 94 L.Ed.2d 690 (1987). A court should be particularly careful if the case is a discrimination case where the jury might be motivated by sympathy for the alleged victim rather than the facts of the case. *Ibid.* Under Michigan law, in a case of retaliatory firing, as in other protected activity or category cases, a *Burdine*-type analysis applies. *Taylor v. General Motors Corp.,* 826 F.2d 452, 456 (6th Cir.1987). *See Texas Department of Community Affairs v. Burdine,* 450 U.S.

248, 253, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981).

Under *Burdine*, the plaintiff has the initial burden of presenting a prima facie case of discriminatory discharge which the employer can rebut by a showing that there were valid reasons for the discharge. At this point, in order to defeat the employer's proferred reason, the plaintiff must show that it was pretextual. *Taylor*, 826 F.2d at 456. However, the ultimate burden of proof rests with the plaintiff at all times. *Burdine*, 450 U.S. at 253, 101 S.Ct. at 1093–94.

YFS first argues that Polk did not make out a prima facie claim of retaliatory discharge. In *Wrenn v. Gould*, 808 F.2d 493, 500 (6th Cir.1987), a case decided using the *Burdine* analysis, this circuit determined that in order to make out a prima facie case of retaliatory discharge, the plaintiff had to prove that 1) plaintiff engaged in a protected activity, 2) that this was known by the defendant, 3) that the defendant took an employment action adverse to the plaintiff, and 4) that there was a causal connection between the protected activity and the adverse employment action.

■ In the present case, YFS contends that plaintiff has made no showing that YFS knew of her visit to the MDCR. However, plaintiff presented evidence that Sheila Evans knew that she had gone to the MDCR because of her comment to plaintiff that "I know where you've been." A reasonable jury could also infer from the timing of plaintiff's discharge, one day after her visit to the MDCR, that there was a causal connection between the two. Therefore, a reasonable person could have found that plaintiff made out her prima facie case of retaliatory discharge.

YFS then contends that even if the plaintiff made out a prima facie case of retaliatory discharge, she was not able to rebut YFS's claim that the discharge was for cause.

"Once defendant articulates [a] nondiscriminatory reason [for the retaliatory discharge], the *Burdine* presumption flowing from the prima facie case automatically drops out of the case." *Wrenn*, 808 F.2d

at 501. The plaintiff bears the burden of proving that the protected activity was a "significant factor" in the decision to discharge. *Taylor*, 826 F.2d at 456; *Polk v. YFS*, 801 F.2d 190, 199 (6th Cir.1986). To be a "significant factor," it must be one of the reasons for the discharge; the plaintiff need not prove that the discharge would not have occurred absent the protected activity. *Ibid.*

■ YFS claims that Polk was discharged solely because of her insubordination and points to evidence that insubordination regarding her refusal to show her work was grounds for dismissal before the Employee Review Committee. However, the relevance of this fact is somewhat questionable. Our inquiry is not whether Polk's alleged insubordination would be proper grounds for her dismissal, but whether this insubordination was merely a pretext for her dismissal. Similarly, even if the Employee Review Board was not aware of her visit to the MDCR, and would have dismissed her because of insubordination, this does not automatically mean that this insubordination charge was not pretext. YFS has introduced no evidence that management normally files a formal complaint for termination before the review board for an employee who has failed to show requested work to superiors.

Furthermore, there was testimony that Ms. Evans knew of Polk's visit. Even if this evidence is discounted because of questions regarding the source of this knowledge, Mr. Waterbury also testified that he might have known of this visit. Evans and Waterbury were the ones who brought the complaint before the Employee Review Committee. In addition, the alleged incident which caused plaintiff's dismissal occurred one day after her visit. Although this court might have decided the case differently if we had been the trier of fact, the evidence was not so insubstantial that a reasonable jury could not have believed that unlawful retaliation was a significant factor in Polk's discharge. Therefore, we uphold the district court's denial of a judgment NOV.

## III

Appellant YFS further contends that there should be a new trial because the district court improperly decided several questions of admission of evidence.

Rulings regarding admission of evidence are reviewed under the abuse of discretion standard. *Schrand v. Federal Pacific Elec. Co.*, 851 F.2d 152, 157 (6th Cir.1988). In the context of an evidentiary ruling, abuse of discretion exists when the reviewing court is firmly convinced that a mistake has been made regarding admission of evidence. *Ibid.* However, even if a mistake has been made, a new trial will not be granted unless the evidence would have caused a different outcome at trial. *Ibid.*

YFS raises several objections to evidence introduced regarding the incident with Henry Johnson of Vispak industries. Specifically, YFS argues that the testimony of Henry Johnson regarding his ability to cancel Vispak's business with YFS is irrelevant because the threatened cancellation occurred before the visit to the MDCR, that the introduction of Tom Watkins's demotion to illustrate his incompetence in dealing with the Vispak incident was similarly irrelevant, and that the admission of Johnson's testimony was further aggravated by the refusal of the trial court to admit rebuttal evidence to counter his testimony.

■ With respect to appellant's complaints of relevancy, YFS failed to preserve this objection. Although YFS filed a motion in limine to restrict the introduction of evidence relating to the Vispak incident, the motion was denied, and YFS did not appeal this denial. Therefore, this objection is without merit.

YFS also wished to admit a report by Mr. Perry, an investigator for the MDCR, in order to rebut Henry Johnson's testimony that he [Johnson] did not threaten to withdraw Vispak's business from YFS. However, the trial judge would allow this part of Perry's report to be admitted only if the rest of the report were also admitted concerning Perry's conclusion that the Vispak incident was "fabrication and exaggeration." The trial court relied upon Rule 106, Fed.R.Evid., in making this decision.

■ Rule 106 is intended to prevent the introduction of misleading impressions caused by taking one portion of a document out of context without including other portions relevant to the part so excised. *United States v. Soures*, 736 F.2d 87, 91 (3rd Cir.1984), *cert. denied*, 469 U.S. 1161, 105 S.Ct. 914, 83 L.Ed.2d 927 (1985). Rule 106 is not to be used to bring in otherwise excludable material just because part of a document may be utilizable for impeachment purposes. *United States v. Costner*, 684 F.2d 370 (6th Cir.1982).

■ YFS attempts to characterize this as an analogous situation to *Costner*. However, this is a mischaracterization. YFS wished to introduce part of this report in order to discredit Johnson by showing the concern for Vispak business not pretextual. The part YFS wished to exclude directly related to the pretextual nature of the interference with Vispak's business charges and therefore the trial judge correctly applied Rule 106.

YFS also wished to call Robert Disher as a witness in order to rebut Johnson's testimony that he had no actual control over Vispak's business. The trial judge did not allow this because Disher was not on YFS's witness list. When YFS objected that the judge stated that witnesses on the pre-trial list and "rebuttal" witnesses could be called, the judge replied that this only referred to witnesses called by the plaintiff in the rebuttal part of her case, not any witnesses in either the plaintiff's or defendant's case in chief.

■ Although a rebuttal witness may be any witness called to dispute previously given testimony as well as any witness called in the third section of a trial (plaintiff's rebuttal), the error in the trial court's ruling could not have resulted in a different result at trial. Disher was only going to testify that Johnson had actual control over the termination of the YFS and Vispak business relationship, apparently to illustrate that the Company's purported concern about the plaintiff's relationship with Johnson was not pretextual. However,

even assuming that the entire Vispak incident was relevant (see discussion above), the only other relevant question is whether YFS believed that Johnson had the power to control Vispak business, not whether he could actually control it.

YFS further challenges the trial court's admission of the demotion of Tom Watkins to show that he was considered incompetent by YFS and therefore his handling of the Vispak incident might not have been proper. YFS claims that it is irrelevant, and that it is prejudicial because it was another example of YFS taking a negative employment action. As noted above, YFS has already waived any objection it may have had based on the relevancy of the Vispak incident. Therefore, this objection also falls.

■ YFS also contends that the trial court admitted evidence of Sheila Evans's sexual advances contrary to this court's earlier instructions in *Polk I.* In this court's prior disposition of this case, it ruled that evidence of Evans's sexual advances made towards other employees was not relevant to the question of retaliatory discharge. In the trial below, the district court allowed the introduction of evidence relating to the tension that the promotion of Evans caused in the office. YFS argues that this was a violation of the previous order of this court.

This contention is incorrect. No mention was made of Evans's alleged sexual advances, and certainly the evidence suggests there were other causes of tension in the office because of Evans. Further, this tension was related to Polk's theories of pretext for her discharge. Though the relevancy of this evidence may be subject to differing interpretations, the ruling was certainly not an abuse of discretion.

■ Appellant reserves its harshest criticism for admission of Linda Sloan's testimony concerning the propriety of Polk's discharge. The record indicates, however, that counsel for the defense was the first to raise the issue in its cross-examination of Sloan. Specifically, defense counsel asked Sloan "basic" questions about what constituted insubordination and presented her with a hypothetical strikingly similar to plaintiff's situation. At this point plaintiff's counsel objected to this line of questioning, and the court noted that it was a "new area," and counsel for defense agreed. However, the court allowed the questioning. Because of this initial questioning by the defense counsel, the district court on re-direct allowed plaintiff's counsel to question Sloan regarding Polk's "insubordination." Therefore, counsel for the defense "opened the door" to this line of questioning, and the follow-up testimony was properly admitted.

### IV

Appellant's last contention concerns the jury instructions given by the trial court. A trial court must submit fair and adequate instructions to the jury. *Scalabrino v. Grand Trunk Western Railroad,* 356 N.W.2d 258 (1984). If the instructions completely ignore an issue or fail to set forth essential elements, the instructions are in error and a new trial is necessary. *Zeni v. Anderson,* 56 Mich.App. 283, 224 N.W.2d 310, 321 *rev'd on other grounds,* 397 Mich. 117, 243 N.W.2d 270 (1974).

In this case, appellant contends that it was error for the court to refuse to instruct the jury that Polk's "insubordination" was just cause for her dismissal, and that the only issue left was pretext. Appellant contends that this issue had already been decided in this litigation by the ALJ for the MESC. This contention is without merit.

■ Michigan law has specifically rejected the contention that a prior decision of the Michigan Employment Security Commission is dispositive of the same issue at trial. *Storey v. Meijer,* 431 Mich. 368, 429 N.W.2d 169 (1988). Furthermore, in this court's previous decision it noted that Polk had made out a prima facie case of discrimination, but made no mention of whether this prima facie case had been rebutted by YFS. Therefore, YFS was not entitled to an instruction which would affirmatively state that it had rebutted plaintiff's prima facie case. This issue was properly before

the jury and the trial court's refusal to give this instruction was a correct one.[1]

Appellant also contends that the jury should have been instructed that any non-economic damages in the form of emotional distress did not result from retaliatory discharge because of this court's prior holding that Polk could not state a cause of action for intentional infliction of emotional distress. This contention is likewise without merit.

Michigan law recognizes emotional distress as an element of loss in a case based on the Elliot–Larsen Civil Rights Act. *Schafke v. Chrysler Corp.*, 147 Mich. App. 751, 383 N.W.2d 141, 143 (1985). This court's earlier decision regarding intentional infliction of emotional distress did not touch upon this issue as it relates to the Elliot–Larsen Civil Rights Act. Therefore, plaintiff was able to recover these damages in her subsequent trial.

For the foregoing reasons, the judgment of the district court is AFFIRMED.

---

**1.** Though *Storey v. Meijer* changes the rationale used in this court's previous dismissal of plaintiff's contract claim in *Polk I,* 801 F.2d at 195, it is irrelevant in the present appeal, because, as conceded at oral argument, no additional damages could be awarded in the present case.