**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Robert SHAVER, Defendant–Appellee.**

No. 02–2259.

United States Court of Appeals,
Sixth Circuit.

Feb. 27, 2004.

Timothy P. VerHey, U.S. Attorney's Office for the Western District of Michigan, Grand Rapids, MI, for Plaintiff–Appellee.

Jerry Strauss, Strauss & Associates, Minneapolis, MN, for Defendant–Appellant.

Before BOGGS, Chief Judge; GUY, Circuit Judge; and HOOD, District Judge.*

PER CURIAM.

Defendant–Appellant Robert Shaver appeals from his conviction by a federal jury, on the grounds that the trial judge violated his Fifth Amendment right against self-incrimination and his Sixth Amendment right to confront his accusers by restricting him from eliciting exculpatory portions of his own confession on cross-examination

---

* The Honorable Denise Page Hood, United States District Judge for the Eastern District of Michigan, sitting by designation.

of a prosecution witness. In the alternative, he appeals his sentence as based on clearly erroneous findings of fact. We affirm the jury verdict and the sentence of the district court.

## I

Shaver was convicted of mail fraud, in violation of 18 U.S.C. § 1341. His defense was that he had merely followed the financial instructions of his late mother, Beverly Shaver, in blissful ignorance of her fraudulent scheme.

Beverly Shaver had managed medical transcription services at Bronson Methodist Hospital ("Bronson") in Kalamazoo, Michigan, selecting and managing contractors who transcribed Bronson's medical records. In this capacity, she had Bronson pay out over $291.000 to an entity called Outsource Providers, an entity that provided no services and existed only to collect the funds. This fraud was discovered only after Beverly Shaver's death from cancer.

Shaver himself was the owner of record of Outsource Providers. He endorsed most of the Bronson checks, depositing them in bank accounts that he also owned. he used those funds to pay for a house and vehicles for himself and his mother. He owned the postal box to which the checks were sent, and he paid for an answering service to take telephone calls for Outsource Providers.

On August 2, 2000, Shaver admitted most of these facts to United States Postal Inspector Keith Fixel when Fixel executed a search warrant for Shaver's home. At the same interview, Shaver told Fixel that he had no idea that Outsource Providers was spurious, and that he had innocently followed his mother's instructions.

At trial, Fixel testified to Shaver's admissions. Shaver attempted on cross-examination of Fixel to elicit his own exculpatory statements. The district court, however, refused to allow this, because Shaver had not independently introduced his exculpatory story. Only after Shaver himself testified to his ignorance of the fraudulent scheme did the court allow him to recall Fixel and question him on direct about the exculpatory statements.

Shaver was found guilty and was sentenced to 27 months in prison and three years of supervised release. This sentence reflected the addition of offense levels for obstructing justice and for more-than-minimal planning. Shaver appeals, claiming that the court's restriction of his cross-examination of Fixel violated the Constitution, and in the alternative challenging his sentence.

## II

The district court allowed Fixel to testify to Shaver's admissions under the hearsay exception for admissions against interest, set forth in Fed.R.Evid. 801(d)(2), but there is no hearsay exception that would allow Fixel to testify to Shaver's hearsay exculpatory statements made in the same interview. We review evidentiary decisions such as exclusion of hearsay for abuse of discretion. *United States v. Wright,* 343 F.3d 849, 865 (6th Cir.2003); *see General Elec. Co. v. Joiner,* 522 U.S. 136, 142, 118 S.Ct. 512, 139 L.Ed.2d 508 (1997). An abuse of discretion occurs "when we are left with the definite and firm conviction that the [district] court committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors or where it improperly applies the law or uses an erroneous legal standard." *United States v. Haywood,* 280 F.3d 715, 720 (6th Cir.2002) (quotation omitted). Even if there was an abuse of discretion, the jury verdict will not be overturned if we can say with assurance

that the verdict was not "substantially swayed" by the error. *Id.* at 724 (quoting *Kotteakos v. United States,* 328 U.S. 750, 765, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946)).

### A. *Self–Incrimination and the Doctrine of Completeness*

Shaver argues that the district court ignored the doctrine of completeness, which in Shaver's view required the court to allow Shaver to introduce the exculpatory material on cross-examination, Because the district court erred. Shaver argues, he had no alternative but to take the stand himself to introduce the material, despite his right to refuse to testify. Shaver misconstrues the scope of the doctrine of completeness, and the nature of his Fifth Amendment right against self-incrimination.

The doctrine of completeness allows a party who is prejudiced by his adversary's introduction of part of a "document, or a correspondence, or a conversation," to enter so much of the remainder as is necessary to explain or rebut a misleading impression caused by the "incomplete character" of that evidence. *United States v. Costner,* 684 F.2d 370, 373 (6th Cir.1982) (quoting *United States v. Littwin,* 338 F.2d 141, 145 (6th Cir.1964)). This doctrine was partially codified as Federal Rule of Evidence 106:

> When a writing or recorded statement or part thereof is introduced by a party, an adverse party may require the introduction at that time of any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it.

Fed.R.Evid. 106. Federal Rule of Evidence 611(a) states that "[t]he court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth." This rule is the "equivalent" of Rule 106 for oral statements. J. Weinstein and M. Berger, *Evidence,* ¶106[01] (1986). As codified, Rules 106 and 611(a) merely affect the order of the trial. *Costner,* 684 F.2d at 373. To forestall any "misleading impression created by taking a statement out of context," the proponent's adversary may present the context along with the statement rather than later in the trial, *Ibid.* Rules 106 and Rule 611(a) do not help Shaver because they do not make inadmissible evidence admissible. *Ibid.; accord United States v. Collicott,* 92 F.3d 973 (9th Cir.1996).

*Costner* might be taken to imply that nothing survives of the common-law doctrine of completeness save that which was codified in Rule 106, but the Supreme Court subsequently held that Rule 106 only "partially codified" the doctrine. *Beech Aircraft Corp. v. Rainey,* 488 U.S. 153, 172, 109 S.Ct. 439, 102 L.Ed.2d 445 (1988). The *Beech Aircraft* defendant, on adverse direct examination of the plaintiff, elicited misleading excerpts of a letter written by the plaintiff, in which the plaintiff entertained evidence that damaged his own theory of the case. The Court held that it was reversible error to prevent the plaintiff from then testifying on friendly cross-examination as to portions of the same letter in which he concluded that the defendant was nevertheless at fault. When misunderstanding or distortion can be avoided only by presenting evidence of the context of a writing, the Court held, that context is *"ipso facto* relevant and therefore admissible under Rules 401 and 402." *Ibid.* Significantly, the Court declined to apply Rule 106 to this "completion evidence," because Rule 106 does not "circumscribe the right of the adversary to develop the matter on cross-examination or as part of his own case." *Ibid.* (quoting

Advisory Committee's Note to Fed.R.Evid. 106).

*Beech Aircraft* shows that the common-law rule of completeness, in some form, survived the codification of the Federal Rules of Evidence. *See* 21 C. Wright & K. Graham. *Federal Practice and Procedure: Evidence* § 5078 (1977 and 2000 supplement) (citing cases). But it is important to note that *Beech Aircraft* did not allow hearsay in rather the witness's pre-trial corroborative declarations in his letter were proffered to rehabilitate him after adverse examination had implicitly accused him of recent fabrication. *See United States v. Gallagher*, 57 Fed.Appx. 622, 628–29, 2003 WL 179994 (6th Cir. Jan. 24, 2003). Completeness, a common-law doctrine, does not outweigh the hearsay rules, because "[h]earsay is not admissible except as provided *by these rules* or other rules prescribed by the Supreme Court pursuant to statutory authority." Fed.R.Evid. 802 (emphasis added). Exculpatory hearsay may not come in solely on the basis of completeness. *United States v. Guevara*, 277 F.3d 111, 127 (2d Cir.), *modified in non-relevant part*, 298 F.3d 124 (2002); *United States v. Wilkerson*, 84 F.3d 692, 696 (4th Cir.1996).

Moreover, even if the district court had erred, which it did not, it did not compel Shaver to testify. The prosecution bore the heavy burden of proof beyond a reasonable doubt, and Shaver could have decided to rest on that burden and trust the jury to find Fixel's account of their conversation non-credible. *United States v. Turner*, 995 F.2d 1357, 1363 (6th Cir.1993). Or, if he thought the court had committed a reversible error, he could have chosen to trust this court to mend the error on appeal. *See United States v. Sutton*, 801 F.2d 1346, 1370 (D.C.Cir.1986).

## B. *Sixth Amendment Confrontation Clause*

"In all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." U.S. Const., amend. VI. This right includes the right to cross-examine those witnesses. *United States v. Martin*, 920 F.2d 393, 396 (6th Cir.1991). We scrutinize especially closely any limitation on cross-examination of the government's star witness. *Dorsey v. Parke*, 872 F.2d 163, 166 (6th Cir.1989). However, the trial judge's power and responsibility to maintain control of the proceedings by making evidentiary rulings limits the accused's right to cross-examine. *Martin*, 920 F.2d at 396. A court does not offend the Confrontation Clause by refusing to admit hearsay as to which no hearsay exception applies. *Takacs v. Engle*, 768 F.2d 122, 125 (6th Cir.1985).

The purpose of the Confrontation Clause is to permit the accused to challenge witnesses' credibility—"a criminal defendant states a violation of the Confrontation Clause by showing that he was prohibited from engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of the witness." *Delaware v. Van Arsdall*, 475 U.S. 673, 680, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986). Shaver had no Sixth Amendment right to use cross-examination to try to prove his own case directly by eliciting new evidence that would not serve to undermine Fixel's credibility. *Mason v. Mitchell*, 320 F.3d 604, 633 (6th Cir.2003).

## III

This court reviews the district court's factual findings as to sentencing for clear error and its legal conclusions *de novo*. *United States v. Smith*, 39 F.3d 119, 123 (1994). At sentencing, facts need not be

proven beyond a reasonable doubt, but only by a preponderance of the evidence. *Ibid.*

### A. *Obstruction of Justice*

The trial judge added two levels to Shaver's offense level at sentencing for obstruction of justice by committing perjury. U.S.S.G. § 3C1.1, comment. (n.4) ("conduct to which this adjustment applies [includes] (b) committing, suborning, or attempting to commit perjury").

As this court has explained.

To determine what constitutes perjury, courts rely on the definition under the federal criminal perjury statute. 18 U.S.C. § 1621. *United States v. Dunnigan,* 507 U.S. 87, 94, 113 S.Ct. 1111, 122 L.Ed.2d 445 (1993). "A witness testifying under oath or affirmation violates this statute if she gives false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake or faulty memory." *Id.* ... Moreover, the district court must either make specific findings for each element of perjury or at least make a finding "that encompasses all of the factual predicates for a finding of perjury." *Dunnigan,* 507 U.S. at 95.

*United States v. Comer,* 93 F.3d 1271, 1282 (6th Cir.1996). We require the trial judge to specify the statements that constitute perjury, and explain why each one was perjurious. *United States v. Lawrence,* 308 F.3d 623, 632 (6th Cir.2002).

■ The trial judge found:

[Shaver's] *testimony* that *he trusted his mother and was unaware* of the fraudulent nature of the scheme was *materially false because* the facts show that the defendant helped to conceal the

fraud by opening a post office box for Outsource Providers and using it to receive payments from Bronson Hospital.

In addition.... There was no reason for Roger Shaver to be the owner [of Outsource Providers] unless he was an active participant in the scheme.... Moreover, the defendant failed to report the income [. which failure] established his knowledge that the funds represented ill-gotten gain.

(Emphasis added). The trial judge thus found 1) testimony under oath. 2) materiality, and 3) knowing falsehood. He found these elements of perjury presented in specific testimony, and he explained rationally why he found that testimony to be false. These findings were not clearly erroneous and must be sustained upon review.

### B. *More Than Minimal Planning*

■ The trial judge added two more levels for "more than minimal planning" under former U.S.S.G. § 2F1.1(b)(2)(A).[1] " 'More than minimal planning' is deemed present in any case involving repeated acts over a period of time, unless it is clear that each instance was purely opportune," Former U.S.S.G. § 1B1.1, comment. (n.1(f)). Shaver's continued payment of bills for Outsource Providers's answering service, his receipt of numerous checks from Bronson at Shaver's dedicated post office box, and his creation of Outsource Providers qualify as such repeated, connected acts in pursuit of the scheme. More than minimal planning, moreover, may be established by the scheme, not by the individual defendant's role. *United States v. Ivery,* 999 F.2d 1043, 1046 (6th Cir.1993). The scheme proved below is highly reminiscent of the example given at former U.S.S.G. § 1B1.1, comment. (n.1(f)) for a more-than-

---

1. This section has since been deleted from the Guidelines; however, defendant is subject to the Guidelines as they existed on the date of sentencing. U.S.S.G. § 1B1.11 (2003).

minimally-planned embezzlement: "creating purchase orders to, and invoices from, a dummy corporation for merchandise that was never delivered." The district judge did not err when it added levels to Shaver's sentence.

## IV

There was no constitutional error in restraining Shaver from introducing hearsay on cross-examination. Shaver committed perjury and performed repeated similar acts to perpetrate his fraud, justifying additional offense levels. Therefore, we affirm Shaver's conviction and the sentence imposed by the district court.