NOT RECOMMENDED FOR PUBLICATION
File Name: 04a0066n.06
Filed: November 4, 2004

No. 03-1336

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| JOHAN MARCH, | ) | THE EASTERN DISTRICT OF |
| | ) | MICHIGAN |
| Defendant-Appellant. | ) | |
| | ) | |
| | ) | |
| | ) | |

Before: SILER, COLE, and ROGERS, Circuit Judges.

PER CURIAM. Defendant Johan March appeals her jury convictions and resulting sentence upon four counts of various illegal handlings of hazardous waste under 42 U.S.C. § 6928(d). March alleges the following errors during her trial: 1) prosecutorial misconduct during closing arguments; 2) the trial court's refusal to permit two defense witnesses to testify; 3) ineffective assistance of counsel during sentencing; and 4) judicial bias and/or partiality. For the following reasons, we **AFFIRM** the convictions and sentence.

## BACKGROUND

In December 1995, Lieutenant Steven Drielak of the environmental crimes unit of Suffolk County, New York, began investigating hazardous waste left in drums in an abandoned trailer. Drielak was able to trace the drums to a company in Detroit, Michigan, that had leased a building

for its operations from Johan March. In 1991, this company went into state receivership, leaving hazardous waste in the building when it ceased operations. In order to settle claims upon the company, the state Receiver returned control of the building to March, along with $60,000 as a credit for cleaning up the site, which the Receiver indicated included costs for disposing of the hazardous waste.

Eventually, a hazardous waste disposal firm was contacted. Gary Cottone, a sales manager, visited the property and met with March and her attorney. At that time, or immediately thereafter, Cottone informed March of the EPA's general disposal requirements. Cottone thought that he had been hired to remove the waste. However, a few days later when he returned to the building, he found the drums had been placed together in an inappropriate manner. Cottone called March and reiterated that the EPA had specific requirements for moving hazardous waste.

In April 1995, Greg Smith, a nephew of March, traveled to Detroit to assist March to load some barrels onto a truck. March indicated to Smith that the barrels did not contain hazardous waste and that they were not doing anything illegal. Contemporaneously, a man from New York named Joe D'Agostino contacted a trucking company to haul a trailer of "shop materials" for his auto business from Detroit to New York. When the truck arrived in Detroit, a driver met an older woman and two younger men who loaded the trailer with drums. Smith testified that he and March's son loaded this truck with drums containing various materials. March also testified that the barrels were loaded that day and that she was present. The load was returned to New York where D'Agostino avoided taking delivery for months, eventually sending a stolen trailer to load the waste. This trailer was subsequently abandoned in New York with the waste aboard.

In April 1996, Drielak and Lori Dueker, an EPA Special Agent, interviewed March. During this interview, March made several specific responses to general questions indicating more knowledge about the movement of the waste than she admitted to the officers.

During trial, the court struck the second day of Drielak's testimony because he could not be made available for cross-examination by the defense. When Dueker began her testimony, which included Drielak's interview questions of March along with the responses, the defense objected on the basis of hearsay, which the court sustained solely as to the substantive use of the questions. The defense also objected to the cross-examination of March about Drielak's questions, but was rejected by the court as the evidence had already come in through Dueker.

The defense also attempted to introduce evidence from two witnesses that Smith had used cocaine during the days in which he testified that he helped load the truck. During trial, Smith was asked about drug and alcohol use during the time he helped load the truck, but he only admitted to alcohol use. The government objected to the proffered testimony under Fed. R. Evid. 608. The defense offered that "the sole reason [the two proposed witnesses] would testify is to impeach the conduct of [Smith]," which led the court to deny the testimony. March was ultimately convicted of four counts of 42 U.S.C. § 6928(d).

Two sentencing hearings were held. The probation office had calculated an offense level that included two enhancement points for obstruction of justice and points for the substantial cost of the offense. When the defense posed objections to the obstruction charge, the court halted the argument, indicating that it had already decided against awarding the two points for obstruction. However,

before sentence was imposed, the defense counsel requested that the court read and consider D'Agostino's grand jury testimony. The court agreed to this and continued the hearing.

When the court reconvened, the prosecutor had filed a motion to reconsider certain enhancement adjustments. The court stated that it did not think any rulings had been made with regard to sentencing issues, to which the defense agreed. The court then went through its entire guideline rulings and a sentencing hearing, adding the two points to the offense level for obstruction of justice. The court eventually concluded that its "[r]ecomputation of the offense level results, of course, in a new offense level of 16," with a guideline range of twenty-one to twenty-seven months. The court then imposed a sentence of twenty-one months, two years of supervised release and restitution for the clean-up costs of the waste.

## ANALYSIS

**A. Prosecutorial Misconduct (arguing facts not in evidence before the jury).**

March alleges that the prosecutor committed misconduct by referencing Drielak's questions, and March's responses to those questions, during the prosecution's closing argument since the court had struck Drielak's testimony. However, the prosecutor properly put the evidence before the jury through Dueker's testimony and the cross-examination of March. The defense objected to the introduction of this evidence from these sources during trial, but was appropriately overruled. Therefore, the evidence argued was properly before the jury.

**B. Exclusion of Relevant Evidence and Sixth Amendment Violation (evidence of drug use by a government witness).**

"All evidentiary decisions are reviewed under an abuse of discretion standard." *General Elec. Co. v. Joiner*, 522 U.S. 136, 141 (1997). March's only proffered reason for the introduction of the testimony of drug use during trial was to attack the conduct and, therefore, the general credibility of the government's witness. "A witness's use of drugs may not be used to attack his or her general credibility, but only his or her ability to perceive the underlying events and testify lucidly at trial." *Jarrett v. United States*, 822 F.2d 1438, 1446 (7th Cir. 1987). As the defense never cogently gave the district court a proper basis for admission after the government lodged an appropriate objection, we cannot find an abuse of discretion.

March also argues that the district court's refusal to allow the witnesses to testify violated her Sixth Amendment right to call witnesses who are material and favorable to her defense. March, however, was unable to articulate any relevant testimony that the proposed witnesses could provide. Moreover, the large amount of other evidence made it unlikely that the proposed testimony regarding Smith could have introduced "a reasonable doubt about guilt in light of the record in this case." *United States v. Reifsteck*, 841 F.2d 701, 705 (6th Cir. 1988).

**C. Ineffective Assistance of Counsel (failing to object to the court's re-visitation of its rulings on obstruction of justice).**

Given the Supreme Court's decided preference that such claims should be presented in a collateral attack and not initially in the form of a direct appeal, *Massaro v. United States*, 538 U.S. 500, 505-06 (2003), we decline to address this issue.

**D. Judicial Misconduct ("rushing" trial, intimidating defense counsel, intruding into trial).**

This claim was not raised before the district court and is without merit.  "[J]udicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge" unless "they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible."  *Liteky v. United States*, 510 U.S. 540, 555 (1994).  A review of the record, and all of March's particular examples of judicial misconduct, reveals nothing more than a trial judge with a strong personality governing the pace of trial.

**AFFIRMED.**