[Cite as *State v. Fast*, 2021-Ohio-2548.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## ASHTABULA COUNTY

| | |
|---|---|
| STATE OF OHIO, | CASE NO. 2019-A-0089 |
| Plaintiff-Appellee, | |
| - v - | Criminal Appeal from the Court of Common Pleas |
| ROBERT LEE FAST, | |
| Defendant-Appellant. | Trial Court No. 2018 CR 00267 |

**O P I N I O N**

Decided: July 26, 2021
Judgment: Affirmed.

*Colleen M. O'Toole,* Ashtabula County Prosecutor, and *Shelley M. Pratt,* Assistant Prosecutor, 25 West Jefferson Street, Jefferson, OH 44047 (For Plaintiff-Appellee).

*William P. Bobulsky*, William P. Bobulsky Co., LPA, 1612 East Prospect Road, Ashtabula, OH 44004 (For Defendant-Appellant).

MARY JANE TRAPP, P.J.

{¶1} Appellant, Robert Lee Fast ("Mr. Fast"), appeals from the judgment of the Ashtabula County Court of Common Pleas sentencing him to an aggregate prison term of 40 to 100 years following a jury trial in which he was found guilty of four counts of rape. The offenses occurred in 1990 and 1991 and involved Mr. Fast's niece when she was a child.

{¶2} Mr. Fast presents four assignments of error, contending that the trial court erred by (1) denying his motion to dismiss the indictment based on the statute of

limitations; (2) granting the state's motion in limine and restricting his cross-examination of the victim in relation to her alleged drug use and addiction; and (3) imposing sentences pursuant to an improperly amended indictment. Mr. Fast also contends that the state presented insufficient evidence to sustain a conviction on count 4 of the indictment and that the jury's verdicts were against the manifest weight of the evidence.

{¶3} After a careful review of the record and pertinent law, we find as follows:

{¶4} (1) The state's prosecution was not barred by the statute of limitations. The statute of limitations was tolled until the victim turned age 18 and was increased to 20 years by subsequent legislation.

{¶5} (2) The trial court did not abuse its discretion in granting the state's motion in limine. The trial court's ruling is supported by a sound reasoning process and is consistent with the legal authority regarding the admissibility of evidence concerning a witness's drug use. In addition, the trial court's ruling did not prohibit Mr. Fast from cross-examining the victim about drug use or addiction related in time or place to any of the charged offenses.

{¶6} (3) The state presented sufficient evidence for a reasonable jury to conclude that the rape offense charged in count 4 occurred in 1991. The discrepancy between the victim's trial testimony and her written statement to the police involved the weight of the evidence rather than its sufficiency.

{¶7} (4) After reviewing the entire record and weighing the evidence and all reasonable inferences, we find that the jury did not clearly lose its way or create a manifest miscarriage of justice. Given the totality of the evidence, we cannot say that inconsistencies or conflicting evidence rendered the victim's testimony so incredible as to

2

be unbelievable.

{¶8} (5) Mr. Fast has not established that his sentence is clearly and convincingly contrary to law. Crim.R. 7(D) permitted the trial court to amend the indictment because it did not change either the name or identity of the charged offenses. The trial court's amendment was, in essence, a correction of a clerical error.

{¶9} Thus, we affirm the judgment of the Ashtabula County Court of Common Pleas.

## Substantive and Procedural History

{¶10} The victim, E.L., was born on March 24, 1981. Mr. Fast is her mother's brother, i.e., her uncle. E.L. alleged that Mr. Fast sexually assaulted her on multiple occasions as a child.

### *The Alleged Offenses*

{¶11} According to E.L., Mr. Fast first sexually assaulted her during the summer of 1990 when she was nine years old. At the time, E.L. resided in Roaming Shores, Ohio, with her mother; her sister, A.G., who is five years older than her; and her stepfather. According to A.G., she and E.L. would go to the First Baptist Church in Jefferson on Wednesdays for dinner and activities. A.G. also signed them up for vacation bible school held at the church during the summer.

{¶12} Mr. Fast resided in a small, second-floor apartment in Jefferson with his long-time girlfriend, Deborah Harden ("Ms. Harden"). E.L. stayed at Mr. Fast's apartment during one week in the summer of 1990 to attend vacation bible school, and she slept on his living room couch.

3

{¶13} One evening, E.L. was lying on the couch watching television, and Mr. Fast was sitting on a chair. Ms. Harden was sleeping in the bedroom with the door closed. Mr. Fast turned the station to pornography, where a man and a woman were engaging in intercourse. Mr. Fast then exposed himself, and he and E.L. engaged in sexual activity involving the touching of Mr. Fast's genitals and fellatio. Afterward, Mr. Fast told E.L. to lie on the couch and go to bed. E.L. buried her head in the pillow and tried to go to sleep.

{¶14} According to E.L., Mr. Fast sexually assaulted her again during the same week. E.L. returned to Mr. Fast's home from vacation bible school. As she was walking up the driveway, Mr. Fast was waxing his car. She went into the kitchen to get something to drink. Mr. Fast followed her, gave her a Lynchburg Lemonade, and told her to drink it. E.L. drank some of the beverage. Mr. Fast led E.L. into the bedroom, where they engaged in sexual activity involving digital penetration, vaginal intercourse, and fellatio. Afterward, Mr. Fast told E.L. that she would never tell anyone because they would not believe her and that she was "just a little liar."

{¶15} Mr. Fast denied any sexual activity with E.L. and stated that she never stayed at his Jefferson apartment. According to Mr. Fast, the apartment was too small for guests. He further denied any knowledge of the vacation bible school at the First Baptist Church or that E.L. attended it.

{¶16} Mr. Fast's long-time partner, Ms. Harden, also denied that E.L. ever spent the night at their Jefferson apartment. They occasionally had friends come over to play cards but did not have overnight guests because there was no place for them to stay. Ms. Harden was aware of the existence of the vacation bible school from the sign on the church but denied that E.L. or A.G. ever stayed at their Jefferson apartment to attend it.

4

{¶17} According to E.L., Mr. Fast also sexually assaulted her during the summer of 1991 when she was ten years old. E.L.'s mother worked during the day, so A.G. watched her at their house in Roaming Shores. E.L. rode her bike to go swimming with her neighbors at a pool located a few blocks away. Mr. Fast showed up and played in the pool with E.L. and her friends. He was wearing a bright blue Speedo-type bathing suit.

{¶18} When it was time to leave, Mr. Fast said he would take E.L. home. He put her bike in his car, which was a maroon Camaro. Instead of driving E.L. home, Mr. Fast drove in the opposite direction to an oil well drive. He told E.L. to get out of the car despite her concerns about getting home late. Mr. Fast had E.L. remove her bathing suit and subsequently engaged in anal intercourse with her. Afterward, Mr. Fast told E.L to put her bathing suit back on and said no one would believe her if she told anyone because she was "just a little liar."

{¶19} He told E.L. to get back in the car and drove her to her house. A.G. was waiting at the end of the driveway because E.L. was late. When E.L. got out of the car, she could barely walk, and A.G. asked her what happened. Mr. Fast told her that E.L. fell off her bike.

{¶20} Mr. Fast denied any sexual activity with E.L. on that day. According to Mr. Fast, A.G. had asked him to pick E.L. up at the swimming pool because her bike had broken down. Mr. Fast drove to the pool and swam for a short period of time. He was wearing a white and blue Speedo under his shorts. Afterward, he put E.L.'s bike in the back of his 1988 Camaro. E.L. had said something about wrecking it, and he observed

5

a flat tire. He drove E.L. straight to her house, put her bike in the shed, and went home. Months later, he patched the tire during a family get-together.

{¶21} E.L. never reported the sexual assaults until she became an adult. She told her future wife at age 21 and A.G. at age 22. After E.L. told A.G. that she had been sexually abused, A.G. did not speak to her for a year.

{¶22} In September 2017, E.L., accompanied by A.G., her wife, and her mother, confronted Mr. Fast at his and Ms. Harden's residence in Jefferson. E.L. told Mr. Fast, "I am done keeping your secrets, you are dead to me." Mr. Fast responded by asking what E.L. wanted from him. E.L. told him, "You're dead to me," walked away, and got into her vehicle. According to Ms. Harden, Mr. Fast was stunned and sat on the ground "with his mouth dropped open."

### Police Report and Investigation

{¶23} In December 2017, E.L., accompanied by her mother, went to the Jefferson Police Department to file charges against Mr. Fast. She spoke with Sergeant Aaron Dumperth ("Sgt. Dumperth"), who asked her to write out a statement. E.L. wrote for several hours that morning but did not finish. She came back the next day and wrote for several more hours. Sgt. Dumperth described E.L. as being emotionally distraught at some points.

{¶24} For the alleged offenses occurring in Jefferson, the year 1990 appears in parentheses. For the alleged offense occurring in Roaming Shores, E.L. identified the year as 1992.

{¶25} After E.L. completed her statement, Sgt. Dumperth spoke with personnel at the First Baptist Church. He obtained bible school program pamphlets from 1989 and

6

1990.  A.G.'s name appears in the 1989 program; E.L.'s name does not appear in either program.

{¶26}  Sgt. Dumperth also interviewed A.G. via telephone and E.L.'s wife.  He did not attempt to collect any physical evidence for DNA testing due to the lengthy period of time between the alleged offenses and E.L.'s reporting of them.

### *Indictment*

{¶27}  In April 2018, the Ashtabula County Grand Jury indicted Mr. Fast on six counts of rape involving a person less than 13 years of age in violation of R.C. 2907.02(A)(1)(b) (counts 1 through 6) and two counts of rape involving submission by force or threat of force in violation of R.C. 2907.02(A)(2) (counts 7 and 8).  The indictment identified counts 1 through 6 and 8 as being felonies of the first degree and count 7 as being an aggravated felony of the first degree.

{¶28}  The indictment alleged the following time periods and locations for each of the charged offenses:

{¶29}  Counts 1, 2, and 3:  On or between March 24 and December 31 of 1990 in Jefferson.

{¶30}  Count 4:  On or between March 24 and December 31 of 1991 in Roaming Shores.

{¶31}  Counts 5 and 6:  On or between June 1 and September 1 of 1992 in Roaming Shores and in Rome, New Lyme, and Lenox Townships.

{¶32}  Count 7:  On or between June 1 and August 30 of 1996 in Lenox, New Lyme, and Dorset Townships and in Roaming Shores.  Over Mr. Fast's objection, the trial

7

court subsequently permitted the state to amend this alleged time period to begin on June 1, 1994.

{¶33} Count 8: On or between May 1 and May 31 of 2000 in the states of Ohio and West Virginia.

{¶34} Mr. Fast appeared through counsel and pleaded not guilty to the charges.

***Pretrial Motions***

{¶35} The parties filed several pretrial motions. Relevant to this appeal, the state filed a "motion in limine to prohibit irrelevant evidence or testimony." According to the state, E.L. disclosed to investigators that, on some instances, Mr. Fast gave her alcohol and marijuana prior to sexually abusing her, which the state conceded was relevant evidence. However, the state contended that evidence regarding E.L.'s alcohol or drug use "unrelated in time or place to the offenses charged" was irrelevant and prejudicial and, therefore, inadmissible. The state sought an order prohibiting the defense from questioning E.L. or presenting evidence or testimony regarding her alcohol or drug use "unrelated in time or place to the offenses charged."

{¶36} Mr. Fast opposed the state's motion, contending that evidence relating to E.L.'s "drug addiction and other problems during the period of time referenced after the dates set forth in the Indictment" bore directly upon E.L.'s credibility and her ability to accurately recall evidence that the state sought to introduce.

{¶37} Mr. Fast filed a motion to dismiss the indictment based on the six-year statute of limitations set forth in the version of R.C. 2901.13 in effect at the time of the alleged offenses. He later filed a supplement to his motion. The state opposed Mr. Fast's

8

motion to dismiss, contending that the statute of limitations was tolled until E.L. turned 18 and that it was subsequently increased to 20 years.

{¶38} The trial court held a hearing on pending pretrial motions. The trial court heard testimony from E.L. in relation to Mr. Fast's motion to dismiss. She testified that she was born on March 24, 1981, and turned 18 in 1999; she first disclosed the alleged sexual assaults to her future wife and her sister when she was over the age of 21; and she had had not disclosed the alleged sexual assaults prior to turning 18. The trial court found that the statute of limitations did not begin to run until March 24, 1999, and overruled Mr. Fast's motion to dismiss.

{¶39} The defense presented argument in opposition to the state's motion in limine. According to the defense, E.L. indicated in her statement to police that she was a "drug addict" and was using marijuana during the time period alleged in count 8, i.e., May 2000. The defense contended that this evidence was directly and materially related to count 8. In addition, E.L.'s ongoing drug use and addiction was relevant to her ability to recall events that allegedly occurred 29 years prior. Following the defense's argument, the trial court stated that it would grant the state's motion in limine.

{¶40} The trial court subsequently filed a judgment entry overruling Mr. Fast's motion to dismiss, finding that the statute of limitations was increased to 20 years; it did not begin to run until E.L. turned 18; and the indictment was filed before the statute of limitations had expired.

{¶41} The trial court filed a separate judgment entry granting the state's motion in limine without setting forth its reasoning.

{¶42} The state filed a motion to dismiss count 8, which the trial court granted.

9

## Jury Trials

{¶43} In May 2019, the matter proceeded to a jury trial on the seven remaining counts in the indictment. The jury returned not guilty verdicts on counts 5, 6, and 7 and failed to reach verdicts on counts 1 through 4. The state requested that the matter be reset for a retrial on the latter counts.

{¶44} The state filed a motion to amend counts 1 through 4 of the indictment to state that the offenses were "aggravated" felonies of the first degree rather than felonies of the first degree based on the version of R.C. 2907.02(A)(1)(b) in effect in 1991. Mr. Fast filed an objection to the state's motion, contending that it was barred by double jeopardy.

{¶45} The trial court filed a judgment entry granting the state's motion to amend and overruling Mr. Fast's objection. The trial court determined that the amendment would not change the name or identity of the charged offenses and that jeopardy had not attached to counts 1 through 4 because the jury did not reach a verdict in the first trial.

{¶46} In September 2019, the matter proceeded to a retrial on counts 1 through 4. Prior to the state's case-in-chief, the defense renewed its motion to dismiss the indictment, which the trial court overruled.

{¶47} The defense also made a proffer in anticipation of E.L.'s testimony. According to the defense, E.L.'s oral and written statements to the Jefferson Police Department referenced alcohol and drug use/abuse as a teenager and drug addiction. The defense argued that such issues were relevant to E.L.'s "memory," "lack of memory," and "accuracy of memory" regarding the alleged incidents from 1990 and 1991 and requested permission to cross-examine E.L. about them.

10

{¶48} The trial court inquired whether it had previously reviewed the issue in ruling on the state's motion in limine, and defense counsel confirmed that it had. The trial court further inquired whether there was a basis to believe that E.L. was using any alcohol or drugs of abuse in calendar years 1990 or 1991, and defense counsel confirmed there was not. The trial court stated that its previous ruling would stay; it would continue to enforce the previously-granted motion in limine; and there would be no examination regarding E.L.'s alcohol and drug abuse that occurred long after the allegations in counts 1 through 4.

{¶49} As its case-in-chief, the state presented testimony from E.L., A.G., and Officer Dumperth. During E.L.'s testimony, she described the alleged events underlying counts 1 through 4 in very specific detail.

{¶50} Following the state's presentation of its evidence, the defense moved for acquittal pursuant to Crim.R. 29, which the trial court overruled.

{¶51} The defense presented testimony from Ronald McCloud, who was Mr. Fast's former co-worker and attested to Mr. Fast's reputation for good character and truthfulness; Ms. Harden; and Mr. Fast.

{¶52} The defense submitted as exhibits the vacation bible school programs from 1989 and 1990; a diagram of Mr. Fast's Jefferson apartment that he had prepared; and a photograph from a family event in 1998 that included Mr. Fast, Ms. Harden, and E.L. The defense used Sgt. Dumperth's police report during its cross-examination of the state's witnesses but did not offer it into evidence. After resting, the defense renewed its Crim.R. 29 motion for acquittal, which the trial court again overruled.

11

{¶53} Following deliberations, the jury returned guilty verdicts on all four counts. The trial court ordered a presentence investigation and set the matter for sentencing.

### *Post-trial Motions*

{¶54} Following the trial court's filing of its judgment on the verdict, Mr. Fast filed a motion for judgment of acquittal pursuant to Crim.R. 29(C), Article I, Section 10 of the Ohio Constitution, and the Fifth and Fourteenth Amendments to the United States Constitution, and, in the alternative, a motion for a new trial pursuant to Crim.R. 33. Mr. Fast also requested a hearing, preparation of a trial transcript, and leave to supplement his motion upon receipt of the trial transcript. The trial court filed a judgment entry overruling Mr. Fast's motions and request.

### *Sentencing*

{¶55} At the sentencing hearing, the trial court sentenced Mr. Fast to terms of actual incarceration of 10 to 25 years in prison on each count, with count 2 to be served consecutive to count 1; count 3 to be served consecutive to counts 1 and 2; and count 4 to be served consecutive to counts 1, 2 and 3; for an aggregate term of actual incarceration of 40 to 100 years. The trial court filed a judgment entry memorializing the jury's guilty verdicts and Mr. Fast's sentences.

{¶56} Mr. Fast appealed and presents the following four assignments of error for our review[1]:

{¶57} "[1.] The trial court committed prejudicial error by failing to grant Defendant's Motion to Dismiss the indictment based upon the statute of limitations set forth in Ohio Revised Code Section 2901.13.

---

[1]. This court granted several extensions for the filing of the record on appeal, which were necessary due to the court reporter's illness.

Case No. 2019-A-0089

{¶58} "[2.]   The trial court committed prejudicial error by granting the State's Motion in Limine and restricting Defendant's cross-examination of [E.L.] relative to her drug use and addiction.

{¶59} "[3.]  The trial court committed judicial error by failing to grant Defendant's Motions for Acquittal and Motion for New Trial.

{¶60} "[4.]   The trial court committed prejudicial error in the sentencing of Defendant."

## Motion to Dismiss

{¶61} In his first assignment of error, Mr. Fast contends that the trial court erred in denying his motion to dismiss the indictment.

### *Standard of Review*

{¶62} We review a trial court's decision on a motion to dismiss pursuant to a de novo standard of review. *State v. Rode*, 11th Dist. Portage No. 2010-P-0015, 2011-Ohio-2455, ¶ 14.

### *Statute of Limitations*

{¶63} Mr. Fast contends that counts 1 through 4 of the indictment were barred from prosecution by virtue of the six-year statute of limitations set forth in the former version of R.C. 2901.13.  We disagree.

{¶64} The former version of R.C. 2901.13(A)(1) provided for a six-year statute of limitations for all felonies except murder and aggravated murder.  The former version of R.C. 2901.13(F) provided that "[t]he period of limitation shall not run during any time when the corpus delicti remains undiscovered."  The Supreme Court of Ohio held that "[f]or purposes of R.C. 2901.13(F), the corpus delicti of crimes involving child abuse or neglect

13

is discovered when a responsible adult, as listed in R.C. 2151.421, has knowledge of both the act and the criminal nature of the act." *State v. Hensley*, 59 Ohio St.3d 136, 571 N.E.2d 711 (1991), syllabus.

{¶65} In *Hensley*, the victims were still minors at the time the abuse was reported and prosecution commenced. Several appellate districts subsequently determined that the tolling of the statute of limitations adopted in *Hensley* ceases when the victim reaches the age of majority. *See State v. Hughes*, 633 N.E.2d 1217, 1219 (12th Dist.1994); *State v. McGraw*, 8th Dist. Cuyahoga No. 65202, 1994 WL 264401, *4 (June 16, 1994); *State v. Weiss*, 96 Ohio App.3d 379, 384, 645 N.E.2d 98 (5th Dist.1994); *State v. Webber*, 101 Ohio App.3d 78, 81, 654 N.E.2d 1351 (9th Dist.1995); *State v. Elsass*, 105 Ohio App.3d 277, 281, 663 N.E.2d 1019 (10th Dist.1995); *State v. Hammons*, 3d Dist. Defiance No. 4-95-3, 1995 WL 737526, *3 (Dec. 14, 1995); *State v. Wooldridge*, 2d Dist. Montgomery No. 17708, 1999 WL 812363, *8 (Oct. 8, 1999).

{¶66} Effective March 9, 1999, R.C. 2901.13 was amended to increase the statute of limitations to 20 years for certain offenses, including rape under R.C. 2907.02. *See* H.B. No. 49, 1998 Ohio Laws 188; R.C. 2901.13(A)(3)(a). House Bill 49 provided that the amended statute of limitations "applies to an offense committed prior to the effective date of this act if prosecution for that offense was not barred under section 2901.13 of the Revised Code as it existed on the day prior to the effective date of this act."

{¶67} Thus, R.C. 2901.13(A)(3)(a) requires that a prosecution for rape commence within 20 years after the offense is committed. *State v. Bentley*, 11th Dist. Ashtabula No. 2005-A-0026, 2006-Ohio-2503, ¶ 12. The amendment applies retroactively to offenses

committed prior to the amendment, provided that the statute of limitations for such offenses had not expired prior to the amendment. *Id.*

### *Analysis*

{¶68} Based on the foregoing authority, the state's prosecution of the rape offenses in counts 1 through 4 of the indictment was not barred by the statute of limitations. Counts 1 through 3 alleged rape offenses occurring between March 24, 1990, and December 31, 1990, when E.L. was 9 years old. Count 4 alleged a rape offense occurring between March 24, 1991, and December 31, 1991, when E.L. was 10 years old. At the time these rape offenses were committed, the six-year statute of limitations set forth in the former version of R.C. 2901.13(A)(1) applied. However, there is no evidence that E.L. reported these offenses to a "responsible person" before she attained the age of 18 on March 24, 1999. In fact, E.L. testified during the pretrial motions hearing and during trial that she first disclosed being sexual assaulted after she turned 21.

{¶69} On March 9, 1999, the statute of limitations for rape was increased to 20 years. Since E.L. had not reported the rape offenses to a responsible adult and was three weeks away from her eighteenth birthday, the 20-year statute of limitations became applicable. However, it remained tolled until E.L. turned 18 on March 24, 1999. As a result, the state was required to prosecute Mr. Fast prior to March 24, 2019. The indictment was filed in April 2018; thus, the statute of limitations had not expired.

{¶70} Our conclusion is in accord with those of our sister districts that have applied the foregoing authority to similar facts. *See State v. Warren*, 168 Ohio App.3d 288, 2006-Ohio-4104, 859 N.E.2d 998, ¶ 13-14 (8th Dist.); *State v. Picard*, 5th Dist. Richland No.

15

2009 CA 0108, 2010-Ohio-6358, ¶55-68; *State v. Bowling*, 12th Dist. Butler No. CA2014-01-017, 2015-Ohio-360, ¶ 9-15.

{¶71} Mr. Fast's first assignment of error is without merit.

## Motion in Limine

{¶72} In his second assignment of error, Mr. Fast contends that the trial court erred by granting the state's motion in limine regarding E.L.'s alleged drug use and addiction. According to Mr. Fast, the trial court's ruling restricted his right of cross-examination in violation of Evid.R. 616(B) and his right to introduce relevant evidence in violation of Evid.R. 402.

### *Standard of Review*

{¶73} Both the Supreme Courts of the United States and Ohio have held that the "'extent of cross-examination with respect to an appropriate subject of inquiry is within the sound discretion of the trial court.'" *State v. Green*, 66 Ohio St.3d 141, 147, 609 N.E.2d 1253 (1993), quoting *Alford v. United States*, 282 U.S. 687, 691, 694, 51 S.Ct. 218, 75 L.Ed. 624 (1931). "Thus, when the trial court determines that certain evidence will be * * * excluded from trial, it is well established that the order or ruling of the court will not be reversed unless there has been a clear and prejudicial abuse of discretion." *O'Brien v. Angley*, 63 Ohio St.2d 159, 163, 407 N.E.2d 490 (1980).

{¶74} An abuse of discretion is the trial court's "'failure to exercise sound, reasonable, and legal decision-making.'" *State v. Beechler*, 2d Dist. Clark No. 09-CA-54, 2010-Ohio-1900, ¶ 62, quoting *Black's Law Dictionary* 11 (8th Ed.Rev.2004). When the issue on review has been confided to the discretion of the trial court, the mere fact that

Case No. 2019-A-0089

the reviewing court would have reached a different result is not enough, without more, to find error. *Id.*

### *Right of Cross-examination*

{¶75} The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him * * *." Similarly, the Ohio Constitution provides that "the party accused shall be allowed * * * to meet the witnesses face to face." Article I, Section 10. The primary interest secured by the Confrontation Clause is the right of cross-examination. *Douglas v. Alabama*, 380 U.S. 415, 418, 85 S.Ct. 1074, 13 L.Ed.2d 934 (1965).

{¶76} The right of cross-examination includes the right to impeach a witness's credibility. *Green* at 147. Under Evid.R. 611(B), "[c]ross-examination shall be permitted on all relevant matters and matters affecting credibility." Under Evid.R. 616(B), "[a] defect of capacity, ability, or opportunity to observe, remember, or relate may be shown to impeach the witness either by examination of the witness or by extrinsic evidence."

{¶77} "However, the Confrontation Clause guarantees only 'an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.'" (Emphasis sic.) *State v. Lang*, 129 Ohio St.3d 512, 2011-Ohio-4215, 954 N.E.2d 596, ¶ 83, quoting *Delaware v. Fensterer*, 474 U.S. 15, 20, 106 S.Ct. 292, 88 L.Ed.2d 15 (1985). "Trial courts have 'wide latitude * * * to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant.'" *State v. McKelton*, 148 Ohio

17

Case No. 2019-A-0089

St.3d 261, 2016-Ohio-5735, 70 N.E.3d 508, ¶ 170, quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 679, 106 S.Ct. 1431, 89 L.Ed.2d. 674 (1986).

{¶78} These principles are further reflected in Evid.R. 611(A), which provides that "[t]he court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment."

### *Relevancy and Prejudice*

{¶79} Under Evid.R. 402, "[a]ll relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, by the Constitution of the State of Ohio, by statute enacted by the General Assembly not in conflict with a rule of the Supreme Court of Ohio, by these rules, or by other rules prescribed by the Supreme Court of Ohio. Evidence which is not relevant is not admissible." Evid.R. 401 defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Nevertheless, "[a]lthough relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury." Evid.R. 403(A).

{¶80} Evidence of a witness's drug use may be probative of his or her capacity or ability to observe, remember, or relate under Evid.R. 616(B). *See State v. Jacobs*, 4th Dist. Highland No. 11CA26, 2013-Ohio-1502, ¶ 57 (Harsha, J., concurring). However, courts have recognized there is considerable danger that evidence a witness has used illegal drugs may so prejudice the jury that it will excessively discount the witness's

18

Case No. 2019-A-0089

testimony. *See Flythe v. District of Columbia*, 4 F.Supp.3d 222, 229 (D.D.C.2014) (collecting cases).

{¶81} Thus, this court has held that "the credibility of testimony can be attacked through evidence of a witness's intoxication *at the time of the matter about which the witness seeks to testify.*" (Emphasis added.) *Kenney v. Fealko*, 75 Ohio App.3d 47, 51, 598 N.E.2d 861 (11th Dist.1991). "Such evidence is relevant to the issue of credibility, since it questions the ability of the witness to correctly perceive the events which allegedly occurred." *Id.*

{¶82} Similarly, federal courts have held that "'a witness's use of drugs may not be used to attack his or her general credibility, but only his or her ability to perceive the underlying events and testify lucidly at trial.'" *United States v. March*, 114 Fed.Appx. 671, 674 (6th Cir.2004), quoting *Jarrett v. United States*, 822 F.2d 1438, 1446 (7th Cir.1987).

### *Analysis*

{¶83} Mr. Fast first contends that the trial court erred because evidence regarding E.L.'s drug use and addiction was directly related to her ability to accurately recall events that allegedly occurred 28 years prior to trial.

{¶84} We acknowledge that E.L.'s credibility and her ability to recall the alleged incidents underlying counts 1 through 4 were crucial aspects of the state's case against Mr. Fast. However, Mr. Fast never asserted that E.L. was using drugs or alcohol at any time during 1990 or 1991. At trial, the defense conceded that there was no basis to believe that E.L. was using drugs of abuse or alcohol during 1990 or 1991.

{¶85} Although the trial court did not expressly set forth its reasoning in granting the state's motion in limine, it could have reasonably determined that E.L.'s subsequent

19

drug use and addiction had minimal probative value in establishing her ability to recall prior events and that any such value was outweighed by the danger of unfair prejudice and confusion of the issues. *See AAAA Ents., Inc. v. River Place Community Urban Redev. Corp.*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990) (holding that a decision constitutes an abuse of discretion "if there is no sound reasoning process that would support" it). The trial court's ruling was also consistent with the foregoing authority regarding the admissibility of evidence regarding a witness's drug use. Mr. Fast has not cited any case law to support, much less compel, a contrary conclusion. Therefore, we find no abuse of discretion on the trial court's part.

{¶86} Mr. Fast next contends that the trial court erred because the time period in which E.L. allegedly abused drugs and became an addict, i.e., her "teenage years," encompassed the ten-year time period referenced in the original eight counts of the indictment, i.e., May 24, 1990, through May 31, 2000.

{¶87} Contrary to Mr. Fast's suggestion, the indictment did not allege a continuing course of conduct occurring over a ten-year period. For instance, counts 1 through 3 alleged separate offenses related in time and location, while count 4 alleged an offense related in time but at a different location. The offenses alleged counts 5 through 8 were each unrelated in time and location to counts 1 through 4.

{¶88} In addition, Mr. Fast's use of the phrase "teenage years" is imprecise. At the hearing on Mr. Fast's motion in limine, defense counsel contended that E.L. referenced being a drug addict and using drugs on the date of the offense charged in count 8, which allegedly occurred on or between May 1 through May 31, 2000. During

Case No. 2019-A-0089

oral argument in this case, Mr. Fast's appellate counsel confirmed that this argument relates to the time period alleged in count 8.

{¶89} Even if we presume E.L. was using or was addicted to drugs during May 2000, it does not appear that the trial court's ruling would have prohibited Mr. Fast from cross-examining E.L. about it. The state's motion in limine sought an order prohibiting the defense from questioning E.L. regarding her alcohol or drug use "unrelated in time or place to the offenses charged." E.L.'s alleged drug use during May 2000 was arguably related in time or place to count 8.

{¶90} Even if the trial court's ruling could be construed as being improperly overbroad, Mr. Fast cannot demonstrate resulting prejudice. The trial court subsequently granted the state's motion to dismiss count 8. Drug use or addiction during May 2000 is not arguably related in time or place to counts 1 through 4, which alleged conduct occurring in 1990 and 1991. Thus, any potentially prejudicial effect of the trial court's ruling was subsequently eliminated.

{¶91} Accordingly, we conclude that the trial court did not abuse its discretion in granting the state's motion in limine.

{¶92} Mr. Fast's second assignment of error is without merit.

### Sufficiency of the Evidence

{¶93} Within his third assignment of error, Mr. Fast contends that the trial court erred by denying his motions for acquittal and motion for a new trial based on the deficiencies in the state's evidence.

Case No. 2019-A-0089

## Standard of Review

{¶94} Crim.R. 29(A) provides, in relevant part, that "[t]he court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses."

{¶95} Crim.R. 29(C) provides, in relevant part, that "[i]f a jury returns a verdict of guilty * * *, a motion for judgment of acquittal may be made or renewed within fourteen days after the jury is discharged or within such further time as the court may fix during the fourteen day period. If a verdict of guilty is returned, the court may on such motion set aside the verdict and enter judgment of acquittal."

{¶96} Thus, when a defendant makes a Crim.R. 29 motion, he or she is challenging the sufficiency of the evidence introduced by the state. *State v. Patrick*, 11th Dist. Trumbull Nos. 2003-T-0166 & 2003-T-0167, 2004-Ohio-6688, ¶ 18.

{¶97} Pursuant to Crim.R. 33(A)(4), the trial court may grant a new trial on motion of the defendant where "the verdict is not sustained by sufficient evidence * * *." Although technically distinct from a Crim.R. 29 motion by way of its remedy, a Crim.R. 33(A)(4) motion for a new trial based upon insufficient evidence nonetheless tests the legal sufficiency of the conviction. *State v. Vitantonio*, 2013-Ohio-4100, 995 N.E.2d 1291, ¶ 9. Thus, we review Crim.R. 29 and Crim.R. 33(A)(4) motions under the same standard of review. *State v. Stephens*, 11th Dist. Trumbull No. 2001-T-0044, 2002-Ohio-2976, ¶ 26.

{¶98} ""[S]ufficiency" is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally

22

sufficient to support the jury verdict as a matter of law.'" *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997), quoting *Black's Law Dictionary* 1433 (6th Ed.1990). "In essence, sufficiency is a test of adequacy." *Id.* "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.*

{¶99} When evaluating the adequacy of the evidence, we do not consider its credibility or effect in inducing belief. *Thompkins* at 386-387. Rather, we decide whether, if believed, the evidence can sustain the verdict as a matter of law. *Id.*

### *Analysis*

{¶100} Mr. Fast contends that E.L.'s testimony was "completely deficient" to establish that the rape offense in count 4 occurred in 1991, as charged in the indictment. According to Mr. Fast, E.L.'s testimony referenced the year 1992.

{¶101} Count 4 of the indictment charged Mr. Fast with rape involving a person less than 13 years of age in violation R.C. 2907.02(A)(1)(b) and alleged the offense took place between March 24, 1991, and December 31, 1991, in Roaming Shores.

{¶102} E.L. testified that she was born on March 24, 1981, and that this offense occurred during the summer of 1991 when she was ten years old. During cross-

23

examination, E.L. conceded that she identified the year as 1992 in her written statement to police. On redirect examination, the state inquired as follows:

{¶103} "[THE STATE]: Who is the man who touched you and penetrated you in 1990?

{¶104} "[E.L.] Robert Fast.

{¶105} "[THE STATE]: 1991?

{¶106} "[E.L.] Robert Fast."

{¶107} Thus, we conclude the state presented sufficient evidence for a reasonable jury to conclude that the rape offense charged in count 4 occurred in 1991. The discrepancy between E.L.'s trial testimony and her written statement to the police involved the weight of the evidence rather than its sufficiency.

{¶108} Accordingly, the discussed portion of Mr. Fast's third assignment of error is without merit.

## Manifest Weight of the Evidence

{¶109} Within his third assignment of error, Mr. Fast contends that the jury's verdicts were against the manifest weight of the evidence.

### *Standard of Review*

{¶110} "[W]eight of the evidence addresses the evidence's effect of inducing belief." *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 25. "In other words, a reviewing court asks whose evidence is more persuasive—the state's or the defendant's?" *Id.* "'The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created

24

such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *Thompkins*, *supra*, at 387, quoting *State v. Martin,* 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶111} "'When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony.'" *Id.*, quoting *Tibbs v. Florida*, 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982). "'The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.'" *Id.*, quoting *Martin* at 175.

### *Analysis*

{¶112} Mr. Fast contends that the evidence supporting counts 1 through 3 are contradicted by the "multiple deficiencies" in E.L.'s testimony and the testimony of other witnesses.

{¶113} Mr. Fast has failed to cite any portion of the record or relevant legal authority in support of this proposition, in violation of App.R. 16(A)(7). For this reason alone, his argument lacks merit. In any event, after reviewing the entire record and weighing the evidence and all reasonable inferences, we find that the jury did not clearly lose its way or create a manifest miscarriage of justice.

{¶114} Given the long period of time between the alleged offenses and E.L.'s report to police, the state's case against Mr. Fast necessarily depended heavily on matters of witness credibility. "[T]he credibility of the witnesses is primarily for the trier of the facts." *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the

25

syllabus. "The choice between credible witnesses and their conflicting testimony rests solely with the finder of fact and an appellate court may not substitute its own judgment for that of the finder of fact." *State v. Awan*, 22 Ohio St.3d 120, 123, 489 N.E.2d 277 (1986). A fact finder is free to believe all, some, or none of the testimony of each witness appearing before it. *State v. Fetty,* 11th Dist. Portage No. 2011-P-0091, 2012-Ohio-6127, ¶ 58.

{¶115} Further, when reviewing a judgment under a manifest-weight-of-the-evidence standard, a court has an obligation to presume that the findings of the trier of fact are correct. *Id.* at ¶ 59. This presumption arises because the fact finder had an opportunity to view the witnesses and observe their demeanor in weighing their credibility. *Id.*

{¶116} At trial, E.L. testified in great detail regarding Mr. Fast's alleged sexual assaults. Certain aspects of E.L.'s testimony was bolstered by consistent testimony from the other witnesses.

{¶117} For example, A.G. confirmed the general dysfunction present in their household as children; that she and E.L. were affiliated with the First Baptist Church in Jefferson; that they attended the vacation bible school at the church during certain summers; that E.L. stayed at Mr. Fast's Jefferson apartment during one summer to attend the school; and the general events surrounding the alleged Roaming Shores rape offense.

{¶118} Mr. Fast and Ms. Harden each confirmed details regarding the layout of their Jefferson apartment; that Mr. Fast wore a blue Speedo; and that Mr. Fast owned a

26

red Camaro. Mr. Fast confirmed some of the events surrounding the alleged Roaming Shores rape offense.

{¶119} The jury also heard Mr. Fast's steadfast denials that he sexually assaulted E.L. and both Mr. Fast's and Ms. Harden's testimony that E.L. never stayed overnight at their Jefferson apartment, despite her description of it.

{¶120} The jury was in the best position to view these witnesses and determine their respective credibility. Despite the defense's best efforts, the jury chose to believe E.L.'s version of events.

{¶121} In addition, as the defense demonstrated, E.L.'s trial testimony contained some inconsistences in comparison to her written statement to police. For instance, E.L. stated that the Roaming Shores rape offense occurred in 1992 rather than 1991 and identified the location of Mr. Fast's former Jefferson apartment building as being replaced by Rite Aid rather than Drug Mart. These inconsistencies do not weigh heavily against Mr. Fast's convictions, as the evidence supports an inference that they were errors in recollection.

{¶122} We also note the evidence indicating E.L.'s name does not appear in either the 1989 or 1990 vacation bible school program pamphlets. However, A.G.'s name appears in the 1989 program, which confirms aspects of her testimony. In addition, A.G. testified that she did see not the names of some children who did attend and did not recognize the names of other children who were listed in the program pamphlet as attending. Thus, this evidence also does not weigh heavily against Mr. Fast's convictions, as the evidence supports an inference that the program pamphlets were not entirely factually accurate.

27

{¶123} Given the totality of the evidence, we cannot say that inconsistencies or conflicting evidence rendered E.L.'s testimony so incredible as to be unbelievable. Accordingly, the jury did not clearly lose its way and create a manifest miscarriage of justice in weighing the evidence.

{¶124} The remainder of Mr. Fast's third assignment of error is without merit.

## Sentencing

{¶125} In his fourth and final assignment of error, Mr. Fast contends that the trial court imposed his sentences after a second trial pursuant to an improperly amended indictment, which constituted an abuse of discretion and was in violation of law.

### *Standard of Review*

{¶126} The standard of review for felony sentences is governed by R.C. 2953.08(G)(2). *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶ 16. It provides as follows:

{¶127} "The court hearing an appeal under division (A), (B), or (C) of this section shall review the record, including the findings underlying the sentence or modification given by the sentencing court.

{¶128} "The appellate court may increase, reduce, or otherwise modify a sentence that is appealed under this section or may vacate the sentence and remand the matter to the sentencing court for resentencing. The appellate court's standard for review is not whether the sentencing court abused its discretion. The appellate court may take any action authorized by this division if it clearly and convincingly finds either of the following:

28

{¶129} "(a) That the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (B)(2)(e) or (C)(4) of section 2929.14, or division (I) of section 2929.20 of the Revised Code, whichever, if any, is relevant;

{¶130} "(b) That the sentence is otherwise contrary to law."

{¶131} "'Clear and convincing evidence is that measure or degree of proof which is more than a mere "preponderance of the evidence," but not to the extent of such certainty as is required "beyond a reasonable doubt" in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.'" *Marcum* at ¶ 22, quoting *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus.

### *Law and Analysis*

{¶132} Crim.R. 7(D) governs the amendment of an indictment and provides, in relevant part, as follows:

{¶133} "The court may at any time before, during, or after a trial amend the indictment, information, complaint, or bill of particulars, in respect to any defect, imperfection, or omission in form or substance, or of any variance with the evidence, *provided no change is made in the name or identity of the crime charged.*" (Emphasis added.)

{¶134} Although Mr. Fast contends that the trial court's amendment was "improper" and "in violation of law," he has failed to develop an argument or cite any relevant legal authority in support of this proposition.

{¶135} In any event, we note that the Supreme Court of Ohio has held that "Crim.R. 7(D) does not permit the amendment of an indictment when such amendment changes

29

Case No. 2019-A-0089

the penalty or degree of the charged offense; amending the indictment to change the penalty or degree changes the identity of the offense." *State v. Davis*, 121 Ohio St.3d 239, 2008-Ohio-4537, 903 N.E.2d 609, ¶ 13. The court later clarified that reversible error occurs when the state attempts to "'*increase* the penalty or degree of the offense' charged." (Emphasis added.) *State v. Rohrbaugh*, 126 Ohio St.3d 421, 2010-Ohio-3286, 934 N.E.2d 920, ¶ 9, quoting *Davis* at ¶ 12.

{¶136} For example, in *Davis*, the court found reversible error where the amendment significantly increased the quantity of drugs alleged to have been sold, thereby increasing the degree of the offense to a second-degree felony from a fourth-degree felony and increasing the potential penalties. *See id.* at ¶ 9.

{¶137} In this case, counts 1 through 4 of the indictment charged Mr. Fast with rape in violation R.C. 2907.02(A)(1)(b). These counts alleged that Mr. Fast engaged in sexual conduct with E.L., who was not his spouse and was less than 13 years of age. The indictment identified these offenses as being felonies of the first degree.

{¶138} At the first jury trial, the jury failed to reach verdicts on these counts. Prior to retrial, the state filed a motion to amend the indictment to state that the offenses in counts 1 through 4 were "aggravated" felonies of the first degree based on the version of R.C. 2907.02(A)(1)(b) in effect in 1991. Mr. Fast objected to the state's motion. The trial court granted the state's motion to amend and overruled Mr. Fast's objection.

{¶139} Under these facts, Crim.R. 7(D) permitted the trial court to amend the indictment, as it did not change either the name or identity of the offenses charged. Counts 1 through 4 of the original indictment clearly stated that Mr. Fast was charged with rape in violation of R.C. 2907.02(A)(1)(b) and included the necessary essential elements

of that offense. Under the version of Ohio Revised Code in effect in 1990 and 1991, an offense in violation of R.C. 2907.02(A)(1)(b) was identified as "rape" and was classified as an "aggravated felony of the first degree." *See* former R.C. 2907.02(B). There was not a rape offense classified as a "felony of the first degree." Thus, the trial court's amendment was, in essence, a correction of a clerical error.

{¶140} This court and others have permitted amendments in similar circumstances. For example, in *State v. Wellman*, 4th Dist. Pickaway No. 85 CA 5, 1986 WL 9078 (Aug. 20, 1986), the indictment was amended to state that an aggravated burglary offense in violation of R.C. 2911.11(A)(3) was an "aggravated felony of the first degree" rather than a "felony of the first degree." *Id.* at *3. The Fourth District determined that the amendment did not change the nature or identify of the offense because it was always "aggravated burglary in violation of R.C. 2911.11(A)(3)." *Id.*

{¶141} In *State v. Ryan*, 11th Dist. Ashtabula No. 1316, 1988 WL 363194 (Jan. 22, 1988), the indictment was amended to change the numerical designation of a rape offense from R.C. 2907.02(A)(3) to R.C. 2907.02(A)(1)(b) based on a change in the Ohio Revised Code prior to the commission of the offense. *Id.* at *3. The elements of the offense remained identical, although the degree of felony was changed from a felony of the first degree to an aggravated felony of the first degree. *Id.* This court found no reversible error because the original indictment contained the substantial language of the specific code section involved. *Id.*

{¶142} Our conclusion is not changed by the fact that the amendment occurred prior to a retrial on counts 1 through 4.

Case No. 2019-A-0089

{¶143} "The Double Jeopardy Clause of the United States Constitution prohibits (1) a second prosecution for the same offense after acquittal, (2) a second prosecution for the same offense after conviction, and (3) multiple punishments for the same offense." *State v. Brown*, 119 Ohio St.3d 447, 2008-Ohio-4569, 895 N.E.2d 149, ¶ 10. "[J]eopardy does not terminate when the jury is discharged because it is unable to agree." *Richardson v. United States*, 468 U.S. 317, 326, 104 S.Ct. 3081, 82 L.Ed.2d 242 (1984).

{¶144} Here, the jury failed to reach verdicts on counts 1 through 4 at the first trial. Therefore, Mr. Fast was not retried for the same offenses after acquittal or conviction.

{¶145} Accordingly, Mr. Fast has not established that his sentence is clearly and convincingly contrary to law.

{¶146} Mr. Fast's fourth assignment of error is without merit.

{¶147} For the foregoing reasons, the judgment of the Ashtabula County Court of Common Pleas is affirmed.

THOMAS R. WRIGHT, J.,

MATT LYNCH, J.,

concur.